# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KARI P.[1],                                    Case No. 1:20-cv-531
          Plaintiff,                           Litkovitz, M.J.

vs.

COMMISSIONER OF                                **ORDER**
SOCIAL SECURITY,
          Defendant.

Plaintiff Kari P. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the

Commissioner's response in opposition (Doc. 21), and plaintiff's reply (Doc. 22).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in September 2017, alleging

disability since October 28, 2010,[2] due to severe generalized and social anxiety, post-traumatic

stress disorder (PTSD), bipolar disorder, and severe major depressive disorder. (Tr. 144-45).

The applications were denied initially and upon reconsideration. Plaintiff, through her prior

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

Lovert Bassett. Plaintiff, vocational expert (VE) James Radke, and medical expert (ME) Dr.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Plaintiff amended her alleged disability onset date to September 5, 2017, which is the protective filing date of her application for SSI. Since plaintiff's date last insured through DIB is June 30, 2012, this claim falls under SSI regulations only. (*See* Tr. 16).

Larry Kravitz appeared and testified at the ALJ hearing on April 12, 2019.  On May 17, 2019, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  This decision became the final decision of the Commissioner when the Appeals Council denied review on May 18, 2020.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2012.

2. [Plaintiff] has not engaged in substantial gainful activity since September 5, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: schizoaffective disorder; depression; anxiety; and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that

[plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember and carry[]out simple instructions; work in a routine setting with few changes; tolerate occasional interaction with coworkers and supervisors, but no collaborative joint projects with them or engagement with the public; and no fast-paced jobs that have numerically strict hourly production quotas, but would be able to meet end of day employer expectations.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. [Plaintiff] was born [in] . . . 1982 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[4]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from September 5, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-26).

---

[3] Plaintiff's past relevant work was as a Medicaid specialist, a semi-skilled position (SVP 3). (Tr. 24-25, 136).
[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as dishwasher (560,000 jobs in the national economy); cleaner (41,000 jobs in the national economy); and order picker (25,000 jobs in the national economy).  (Tr. 25-26, 138-40).

4

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ's RFC determination was based upon a selective characterization of the mental health treatment records. Plaintiff also argues that the ALJ selectively characterized Dr. Kravitz's testimony in particular, using only those aspects of his testimony that would support the ALJ's decision to deny plaintiff's claim. Plaintiff alternatively seeks a remand under Sentence Six of 42 U.S.C. §405(g) for administrative consideration of additional evidence.

1. The ALJ's RFC determination

Plaintiff argues that the ALJ selectively picked through her treatment records to highlight entries that suggested improvement and ignored those that supported her alleged symptom severity. Plaintiff likewise argues that the ALJ characterized the ME's testimony as persuasive without explaining the true equivocal nature of his testimony. The Commissioner responds that the ALJ's opinion demonstrates that he considered all of the evidence in the record—that which suggested improvement and that which did not—and the failure of the ALJ to mention each piece of evidence does not necessarily mean that he ignored evidence contrary to his conclusion. The Commissioner also argues that substantial evidence may support an ALJ's decision even where substantial evidence could support a different conclusion. Finally, the Commissioner argues that the ALJ properly weighed the ME's testimony under 20 C.F.R. § 416.920c(a). In reply, plaintiff emphasizes that the mental status exams contained in the treatment records and cited by the ME do not shed light on her ability to sustain a regular work week and the ME's testimony on this point, in particular, was not as conclusive as suggested by the ALJ.

6

> ### a. Treatment records

Plaintiff focuses on the ALJ's characterization of her mental health treatment records

beginning in 2018. The ALJ summarized plaintiff's mental health treatment during that time as

follows:

> In therapy March 30, 2018, the claimant focused on how different she is now with
> her mood and behavior compared to when she first came to therapy last August.
> She feels that the "break down" she had was the best thing that happened to her as
> it got her into treatment. (10F/68). April 13, 2018, she is very proud of self for
> starting the walking video, says she loves doing it and that her teenage daughter
> joined in too. She is doing it daily and is working towards doing it twice a day
> and then try the two-mile walk. She says she has never exercised in her life and
> loves it. She discussed that even though she still has some anxiety, she has not
> had an anxiety attack for a while, that when she feels she gets to that point, she
> has been able to calm herself and distract herself. She feels good about that also.
> (10F/77).

> On May 4, 2018, the claimant reported having depression on some days, but
> mainly she [is] dealing with anxiety and restlessness when she is up. She
> discussed still staying in bed and lack of motivation. (10F/81). May 24, 2018,
> they discussed that for the first time ever, the claimant was able to get through
> mother's day without getting so depressed that she had a "melt down." She
> reports feeling much more "even" in her mood now, and that her medications are
> helping her. (l0F/88). A change in medication is starting to help with her focus
> more and June 22, 2018 she feels just a little more motivated to get out of her bed
> and do things around the house. (l0F/95).

> July 2, 2018, the claimant reports that she feels her memory loss is getting worse.
> (10F/99). July 27, 2018 they discuss how the claimant believes she has spent
> more time with family than she really does and it is related to her memory issues
> and her Schizoaffective symptoms. (10F/103). She also complains of memory
> loss at her primary care physician in August 2018. According to the claimant,
> memory loss has worsened since she began counseling and medication. She is
> also snoring badly and sleeping 12-16 hours a day, sometimes to avoid stressful
> situations. (6F/10).

> The claimant acknowledged that she had a period of reduced anxiety and
> depression during the past year, as of September 21, 2018, as she fears of
> becoming like she was a year ago when she first started going to therapy. She

reported that her anxiety and depression had increased during the past few weeks. (10F/4). October 19, 2018, she reports that she is stable. (10F/18). There was no crying during the November 2, 2018 session and the claimant left in stable mood. (10F/26). November 19, 2018, she was feeling good about getting out of the house more. She had gone out for a birthday dinner with her wife, rather than staying in, rode with her wife to take her uncle and his wife to an appointment, and worked at a school book fair. (10F/30). December 14, 2018, she reported having a rough two weeks overall dealing [with] all the stress of helping to care for her aunt and uncle, but feels good about [the] fact [that] she is stepping up to the plate and helping her wife do this. (10F/42). The claimant reported feeling down, overwhelmed, tired, and worried December 28, 2018, but felt she and her sister were getting closer since the sister has been living with them for two months and problem solved ways to help more with care of aunt and uncle and around the home. (10F/46). However, her family situation was causing stress. Although the claimant problem solved to set alarms to get up to help wife more with taking her uncle to dialysis. (10F/50).

In therapy January 29, 2019, the claimant is having memory issues and her wife feels she is having episodes like she did when she came back from New York, but the claimant cannot recall it all and feels defensive. (8F/4). February 1, 2019, the claimant discussed, with help of wife to fill in the events she has no memory of, her sudden and unusual behavior on the trip back from New York a week ago, yelling at the children when she got home, then calming and apologizing to them all, being told when she was sleeping she was talking, but almost like in another language. (10F/62). The claimant explained at the hearing that they went on two trips to New York to see her wife's son at school, but that she has no memory of the trips.

(Tr. 22-23).

Plaintiff first argues that the ALJ omitted several negative aspects of the March 30, 2018 treatment record—anxiety about weight gain, fear of passing on her mental health issues to her daughter, and continued anxiety in social situations. In context, however, this record is generally positive. Regarding weight gain, in particular, the record states: "Client came up with a realistic goal and was pleased with in." (Tr. 627). As to anxiety, the record notes that she was depressed

with some anxiety but improving. (*Id.*). Overall, plaintiff reported "coping better overall with stress." (*Id.*).

Plaintiff next argues that the ALJ's consideration of the April 13, 2018 treatment record, where she mentions her new walking video exercise regimen (Tr. 636), ignores her later testimony that she did this regimen entirely in her room without leaving the house (Tr. 120). Plaintiff further argues that the ALJ's discussion of the May and June 2018 treatment records ignores that her improvements were confined to increased activity *within her home*. (*See* Tr. 640, 647, 654).

While it is true that the ALJ does not mention plaintiff's testimony regarding the walking video, his discussion of the other treatment records does not reflect selective consideration. Other parts of the treatment records cited by plaintiff suggest she had been engaging in activities outside the home. (*See, e.g.,* Tr. 640 ("[Plaintiff] does get up *and go to most of the family events*, but recently didn't go to daughter's symphony. . . .") (emphasis added); Tr. 654 ("[Plaintiff] also problem solved to at least one time daily [] go out with the family on [an] errand and just sit in the car and wait for them *if* she cannot go inside. She wants to do this. . . .") (emphasis added)).

Plaintiff next argues that the ALJ's consideration of October and November 2018 records noting her stability (Tr. 577, 585) overlook a crucial intervening record in which she reported feeling "very depressed" and "sleeping most of the day. . . ." (Tr. 580). While the ALJ does not mention this particular record, his recitation of the evidence as a whole acknowledges the waxing and waning nature of plaintiff's symptoms, noting worsening memory loss and excessive

9

sleeping in July 2018, an increase in her anxiety and depression in September of 2018, and several difficult periods in December 2018. (Tr. 23).

Finally, plaintiff highlights a misstatement in the ALJ's opinion, where he states that plaintiff went to a school book fair when, in fact, it was her wife that attended. (Tr. 589). While this was a misstatement, this treatment record overall demonstrates plaintiff's openness to being outside the home. With respect to a birthday dinner out with her wife, plaintiff reported that she "enjoyed dinner out" and set a goal of "going out of her comfort zone. . . ." (*Id.*).

The ALJ did not discuss all of the treatment notes referenced by plaintiff and mistakenly characterized one suggesting plaintiff attended a book fair. Overall, however, the Court does not find that the ALJ selectively characterized plaintiff's treatment record and frankly acknowledged plaintiff's ongoing struggles with mental health. There is substantial evidence in the record to support the ALJ's decision. *See Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

### b. *Dr. Kravitz (ME)*

For claims filed on or after March 27, 2017, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b); *see Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-1958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019) (citing 20 C.F.R. §§ 404.1520c(a), (b)(1) (alterations in

original)) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'").

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.*

Dr. Kravitz testified that he reviewed plaintiff's mental health records, an October 2017 consultative evaluation, and her medication history. (Tr. 121-22). Dr. Kravitz testified that he agreed with the state agency that plaintiff was moderately limited in each of the Paragraph B four broad areas of functioning[5] (Tr. 126) and with its residual functional capacity determination:

> [L]imiting [INAUDIBLE] to simple, routine tasks. And I would say within a work environment with brief and uncomplicated interactions with others, no required public contact. Tasks that are generally routine and repetitive. Consistent, predictable [INAUDIBLE]. A work environment with no strict production expectations or stresses, or relatively low, you know, routine, predictable types of stressors. Those with minimal decision-making responsibilities.

(Tr. 126-27). Dr. Kravitz based these opinions on the treatment record, acknowledging that the evidence overall was "mixed" and "waxing and waning." (Tr. 124, 125). Dr. Kravitz also acknowledged that his opinion that plaintiff could sustain a regular work week was a "judgment call" (Tr. 128), and he would be less likely to have that opinion if he put "*more* weight" on plaintiff's testimony (Tr. 127, 128) (emphasis added). Dr. Kravitz was unwilling to predict, based solely on the treatment record, how often plaintiff would have a "bad day" that would prevent her from working. (Tr. 129-30).

In his decision, the ALJ noted that Dr. Kravitz cited plaintiff's treatment records in rendering his opinions, which included the fact that overall, her symptoms had generally become milder in recent times and that she was not on anti-psychotic medications. (Tr. 24) (referencing

---

[5] The paragraph B criteria for Listings 12.03, 12.04, 12.06, and 12.15 include the following four functional areas:

    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(B), 12.04(B), 12.06(B), 12.15(B).

ME's testimony at Tr. 124-125, 129). This demonstrates that the ALJ properly weighed the supportability of Dr. Kravitz's opinion. *See* 20 C.F.R. § 416.920c(c)(1). The ALJ also noted that Dr. Kravitz's opinion was consistent with that the the of the state agency reviewing psychologist (Tr. 24)—an opinion that plaintiff does not challenge—demonstrating the consistency of the opinion. 20 C.F.R. § 416.920c(c)(2). The ALJ also referenced Dr. Kravitz's experience with Social Security claims, his review of the entire record, and his observation of plaintiff at the hearing. *See* 20 C.F.R. § 416.920c(c)(5).

The Court finds that the ALJ properly weighed Dr. Kravitz's testimony. In addition to explaining the reasons why he found Dr. Kravitz's opinion persuasive, particularly the supportability and consistency of the opinion discussed above, the ALJ readily acknowledged that the evidence in support of his RFC was not without evidence to the contrary. (*See* Tr. 24) (acknowledging that plaintiff's testimony weighed against finding that she could work a regular work week and noting plaintiff's recent memory lapse in the otherwise generally improving treatment record). The ALJ properly weighed Dr. Kravitz's opinion in formulating his RFC determination.

The ALJ did not selectively characterize plaintiff's mental health treatment records and properly evaluated Dr. Kravitz's opinion. The ALJ's RFC determination is therefore based on substantial evidence and plaintiff's first assignment of error is overruled.

2.  Sentence-Six remand

Plaintiff contends that a Sentence-Six remand is warranted on the basis of two pieces of evidence generated after the ALJ hearing and decision in this case: (1) a neuropsychology

13

evaluation conducted by George Jewell, Ph.D., dated June 17 and July 2, 2019 (Tr. 86-91); and (2) a letter written in August 2019 from psychiatrist Irfan A. Dahar, M.D (Tr. 84-85) (together, the "Additional Evidence").  Plaintiff argues that the Additional Evidence post-dates the ALJ hearing and concerns plaintiff's condition prior to the ALJ hearing.  She also argues that she attempted to have the neuropsychology examination completed prior to the ALJ hearing but "could not get scheduled until June 2019. . . ."  (Doc. 16 at PAGEID 830).  She finally argues that she should not be penalized for her former counsel's errors, particularly as she suffers from mental impairments, and reasonably relied on that counsel's legal assistance in developing the medical record below.  Plaintiff highlights her prior counsel's failure to obtain a treating source report from her psychiatry practice and to request that the administrative proceedings be held open for the completion of the neuropsychology evaluation.

In response, the Commissioner argues that the Additional Evidence was not "new" because both the neuropsychology evaluation and Dr. Dahar's letter were available to plaintiff (if not generated) prior to the ALJ hearing, and plaintiff offers no evidence explaining why they were not generated earlier.  The Commissioner also argues that neither Dr. Jewell's report nor Dr. Dahar's letter addresses plaintiff's condition during the relevant timer period: prior to the ALJ hearing.  Even if they had, the Commissioner argues that the later opinion evidence was inconsistent with the same treatment notes relied upon by Dr. Kravitz, the medical expert, and therefore would be unlikely to change the ALJ's decision.  Finally, the Commissioner argues that plaintiff's mental impairments alone do not excuse her failure to present evidence to the ALJ.

14

In reply, plaintiff reiterates that her former counsel's patent errors are not properly held against her. She highlights the fact that the Appeals Council did not cite lack of newness or good cause for failing to review the Additional Evidence; it only cited a lack of materiality. (Tr. 2) ("[Dr. Jewell's report and Dr. Dahar's letter] do[] not show a reasonable probability that [they] would change the outcome of the decision."). In addition, plaintiff takes issue with the Commissioner's conclusion that Dr. Jewell's report and Dr. Dahar's letter do not concern plaintiff's condition prior to the ALJ hearing. Plaintiff argues that, while they are not expressly retroactive, their contents obviously implicate and therefore concern the status of plaintiff's condition prior to the ALJ hearing.

### a. Evidence at issue

Dr. Jewell's report states that plaintiff was originally referred for a neurology consultation with another physician in December 2018. Dr. Jewell reviewed an October 2017 psychological evaluation, which included plaintiff's history of severe anxiety, mood swings, paranoid feelings, tactile hallucinations, nightmares, flashbacks, possible visual and auditory hallucinations, and possible dissociation and her diagnoses of schizoaffective disorder depressed type, panic disorder, and generalized anxiety disorder. (Tr. 86). Plaintiff reported memory and cognitive issues, lack of energy and motivation due to her depression, paranoia, and a problem with hearing voices to Dr. Jewell. (Tr. 86-87). Plaintiff reported that her cognitive symptoms seemed to peak around her inpatient mental health admission to Atrium Hospital, at that time having begun several new medications. (Tr. 86). Plaintiff reported some recent improvement in

her cognition and mood, though she continued to experience symptoms of memory loss (misplacing things easily, repeating herself, quickly forgetting conversations). (Tr. 87).

Dr. Jewell's testing showed that plaintiff had mild to moderate impairments in attention and executive functioning, but he concluded that her memory complaints were attendant to her psychiatric conditions as opposed to a neurological impairment. (Tr. 90). Dr. Jewell opined that "a successful return to work [was] very unlikely" at that time, and plaintiff would perform better with adequate rest breaks, no excessive multi-tasking, and an environment free from visual and auditory distractions. (Tr. 91).

Plaintiff next refers to a letter from Irfan A. Dahar, M.D., with whom plaintiff began treating in February 2019. (Tr. 84-85). The August 28, 2019 letter from Dr. Dahar summarized plaintiff's treatment, including a change to her medications, and referenced her consistent treatment with other members of his practice (a therapist and psychiatrist) since August 2017. (Tr. 84). Dr. Dahar described plaintiff's excessive sleeping that, while not without some improvement due to the change in medications, made her not "capable of maintaining/sustaining any sort of day in/day out employment. . . ." (*Id.*). He also concluded that plaintiff's "anxiety in a work setting would make it impossible for her to function." (*Id.*).

Dr. Dahar also summarized plaintiff's reports of psychotic episodes, which last multiple days and occur one to two times monthly. Though he again noted some improvement with the medication changes (episodes were occurring less frequently than before), he concluded that plaintiff "would have many days, probably 5 to 10 or more, over the course of a month that she would not be able to get out of bed, much less be able to go to a job site or maintain any sort of

productive employment, even part time." (Tr. 85). Finally, Dr. Dahar mentioned Dr. Jewell's report only to the extent that he agreed that her memory issues were tied to her psychiatric issues, which were proving "quite resistant to treatment." (Tr. 85).

> *b. Law*

The Court cannot consider evidence presented for the first time to the Appeals Council in deciding whether to uphold or reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g). *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). Rather, when evidence is presented to the Appeals Council for the first time, the only issue to decide is whether, in light of that evidence, the matter should be remanded under Sentence Six of § 405(g) for further administrative proceedings.

Under Sentence Six of 42 U.S.C. §405(g), the Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). A Sentence-Six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 98; *see also Bass II v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). [6] "A claimant shows 'good cause' by demonstrating a reasonable justification for the

---

[6] Plaintiff also seems to raise an error related to the Appeals Council's "perfunctory" review of the Additional Evidence. (*See* Doc. 16 at PAGEID 827-30). The Court finds that the Appeals Council's decision declining review is not a final reviewable decision for purposes of 42 U.S.C. § 405(g) in the Sixth Circuit. *See Thick v. Comm'r of Soc. Sec.*, No. 2:18-cv-10154, 2018 WL 6683348, at *15-16 (E.D. Mich. Nov. 29, 2018), *report and recommendation adopted*, 2018 WL 6650305 (E.D. Mich. Dec. 19, 2018) (summarizing authority within the Sixth

failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* at 357 (citing *Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (1984)) (per curiam). "New" evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357 (quoting *Sullivan*, 496 U.S. at 626). "Material" evidence is evidence that creates "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). The party seeking remand bears the burden of establishing these two remand requirements. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). *See also Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) (citing *Sizemore*, 865 F.2d at 711 n.1) ("Failure to establish any one of these three elements is fatal to the moving party's request.").

### c. Analysis

The Court begins with whether the Additional Evidence is "new." There is no question that both pieces of evidence were not in existence prior to the ALJ hearing. The dispute, however, is whether they were *also unavailable* prior to the ALJ hearing. The Commissioner cites *Ross v. Comm'r of Soc. Sec.*, No. 2:20-cv-1028, 2021 WL 456725, at *4 (S.D. Ohio Feb. 9, 2021), *report and recommendation adopted*, 2021 WL 719028 (S.D. Ohio Feb. 24, 2021), for the proposition that evidence is not new if it could have been requested and produced prior to the ALJ hearing. *See id.* (citing *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 464 (6th Cir.

Circuit holding that a federal court's review is limited to the ALJ's decision).

2007)) ("Evidence is new only if it was not in existence *or was not available to Plaintiff* at the time of the administrative proceeding. *Foster*, 279 F.3d at 357. . . . Had Plaintiff or his counsel requested it, Dr. Wegner could have authored his opinion any time before December 2018 with the results made available to the ALJ.").

While the Court is sympathetic to the fact that plaintiff's prior counsel failed to request Dr. Dahar's report prior to the ALJ hearing, she has not directed the Court to authority under which these circumstances would make this report "unavailable" in the Sentence-Six context. Plaintiff also suggests that Dr. Dahar's report could not have been offered prior to Dr. Jewell's report (and thus, the ALJ hearing). She argues that Dr. Dahar's letter was a "review and comment" on Dr. Jewell's report (Doc. 16 at PAGEID 805), but this characterization is unpersuasive. Dr. Dahar's letter makes only a passing reference to Dr. Jewell's report at the very end: "As per Dr. Jewel[l]'s neuropsychological report, it is noted that [plaintiff's cognitive problems] are primarily a function of her underlying psychiatric conditions." (Tr. 85). The bulk and thrust of Dr. Dahar's letter deal with her symptoms of excessive sleeping and psychotic episodes both prior to and after the ALJ hearing and not her cognitive issues. Dr. Dahar's opinion on these symptoms could have been given prior to the ALJ's hearing. Therefore, because Dr. Dahar's report was not "new" as that term is understood in the Sentence-Six context, remand for review of Dr. Dahar's letter is not appropriate.

With respect to Dr. Jewell's report, plaintiff fails to satisfy the "good cause" prong for purposes of a Sentence-Six remand. In other words, plaintiff has not presented a reasonable justification for not presenting this evidence prior to the ALJ's decision. Plaintiff cites to the

following reasons for not presenting Dr. Jewell's report prior to the ALJ's decision: (1) her inability to schedule the neuropsychological evaluation prior to the ALJ's decision; (2) prior counsel's failure to request that the matter be held open or the ALJ hearing be postponed pending the evaluation; (3) plaintiff's mental impairments; (4) plaintiff's reliance on former counsel to ensure that the record was fully developed; and (5) the unfairness in penalizing a mentally ill claimant for her counsel's errors. (Doc. 16 at PAGEID 830).

Neither prior counsel's failure to request that the ALJ hold open the administrative proceedings nor the other enumerated reasons cited by plaintiff demonstrate good cause, and plaintiff has not cited to caselaw suggesting otherwise. The reasons cited by plaintiff are largely based on prior counsel's inaction and/or unfamiliarity with plaintiff and her impairments.[7] However, "there is absolutely no statutory or decisional authority for [plaintiff's] unstated, but unmistakable, premise that the alleged incompetence of [plaintiff']s first attorney constitutes good cause'. . . ." *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002). *See also Hatfield v. Berryhill*, No. 2:17-cv-76, 2018 WL 494524, at *7 (S.D. Ohio Jan. 22, 2018), *report and recommendation adopted sub nom. Hatfield v. Comm'r of Soc. Sec.*, 2018 WL 1067733 (S.D. Ohio Feb. 23, 2018) (and cases cited therein).

---

[7] Plaintiff cites to her mental impairments as good cause for not presenting the Additional Evidence. However, plaintiff was not proceeding pro se at the ALJ hearing but was represented by counsel. She cannot rely on her mental health impairments to establish good cause under the circumstances. *See, e.g., Hardwick v. Colvin*, 3:13-cv-125, 2014 WL 1092178, at *11 (E.D. Tenn. Mar. 18, 2014) (stating that where the claimant was represented by counsel who appeared at the administrative hearing, "[c]ounsel could have assisted Plaintiff in submitting this information to the ALJ. Accordingly, remand pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted"). *Cf. Grant v. Astrue*, No. 2:07-cv-344, 2008 WL 4059777, at *5 (S.D. Ohio Aug. 26, 2008) (finding a confluence of problems including lack of counsel, mental impairment, and lack of education excused the late production of evidence).

The circumstances in this case are similar to those considered by the Sixth Circuit in *Cline,* 96 F.3d at 148. There, the court of appeals found no good cause for a Sentence Six remand where the plaintiff's attorney was not sufficiently acquainted with the plaintiff such that counsel did not know that a psychological evaluation would be useful until spending a significant amount of time with his client at the ALJ hearing. 96 F.3d at 149. The court was not persuaded by this excuse and stated that counsel should have notified the ALJ of the need for a psychological examination as soon as he realized it at the hearing. *Id*.

*Cline* is sufficiently similar to control the result in this case. Plaintiff was referred for a neuropsychological exam in December 2018 but was not examined by Dr. Jewell until June 2019, one month after the ALJ's decision. The fact that neither counsel nor plaintiff notified the ALJ of the impending evaluation weighs against a finding of good cause. Plaintiff suggests she had no control over when the examination with Dr. Jewell was scheduled, but she fails to present any evidence showing the steps she took to schedule the exam or any other information regarding Dr. Jewell's inability to examine her prior the ALJ's decision in this case. Without more, plaintiff has not demonstrated "good cause" under Sentence Six with respect to Dr. Jewell's report.

Plaintiff has not shown that Dr. Dahar's letter is "new" or "good cause" for her failure to incorporate Dr. Jewell's report into the record prior to the ALJ's decision. *See* 42 U.S.C. § 405(g). *See also Glasco*, 645 F. App'x at 435 (citing *Sizemore*, 865 F.2d at 711 n.1) ("Failure to establish any one of these three elements is fatal to the moving party's request."). A Sentence-Six remand is therefore not warranted and plaintiff's second assignment of error is overruled.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner is **AFFIRMED** and this matter is **CLOSED** on the docket of the Court.

Date:   12/10/2021

Karen L. Litkovitz
Chief United States Magistrate Judge